May it please the Court, this case represents the first opportunity for the Tenth Circuit to weigh in on the scope of federal jurisdiction under 18 U.S.C. 1512A1C following the Supreme Court's ruling in Fowler v. the United States in 2011. This case more specifically involves whether there is a reasonable likelihood under using the Fowler standard that a run-of-the-mill felon in possession of firearm case, which is overwhelmingly prosecuted in state courts, could realistically be expected to cause a person to kill someone for fear that that someone would communicate to a federal official about the commission of that offense. The appellant, Mr. Chatman, his position is that the evidence in this case was insufficient to make that federal jurisdiction and he takes a position that in fact that the federal prosecution in this case a waste of precious judicial federal jurisdiction. What is our standard of review? Is it outlandish, hypothetical, rather remote outlandish or simply hypothetical? Is that the question we have to answer? No. What is the standard of review? What happens in Fowler is that Fowler is quite initially when the case comes to the court in 2011, it only required that there be a possibility that there might be a communication to a federal official. And Fowler quite expressly says that no, it's going to restrict that type of holding. And so it does so because that would transform a federal oriented statute to one that would deal with crimes that as a practical matter are purely state in nature. And it says that Congress specifically did not seek to change the federal state balance. So it set up a basically a framework that required that there be reasonable likelihood that there have been a communication to a federal officer about this offense. But it says. Are we reviewing de novo whether there was sufficient evidence? Yes. And so in doing so, it says that we now are going to defer to the circuit courts to come up with the analytical framework for what constitutes. They do that all the time. Pardon? They do that to us all the time. Yes. And of course, six circuits now have done that. They've they've looked at the standard that those six circuits have adopted as the standard of review. Our position is that we think that the circuit that probably best encapsulates it is the third circuit in the Snyder case. And that is an insufficiency of the evidence case. And so in answer to your first question, which is, what are you looking at? It is a de novo review giving the evidence of the of the case most favorable towards the government as to whether or not this should meet the federal jurisdictional standards. And so Snyder, you know, it's a situation where the the six circuit court cases that have dealt with this if you wanted to encapsulate what they have done, you would probably could do it with two words. One is that where you have systematic review in the sense that there's always going to be some type of federal official reviewing what's happened with this criminal incident, then you have jurisdiction under 1512 A1C. But where you have nothing but sporadic cases, where cases wind up in the federal courts sporadically, where there is no systematic review, then you don't have that situation. And so Snyder looks it does a two part analysis. Snyder is a seventh circuit case. Seventh circuit. I'm sorry if I said third. Yes, you're correct. So the first analytical part of Snyder is that it asks whether or not the case itself is federal in nature. And the crime itself is federal in nature. And so it talks about the various and sundry crimes where such as Valise, where you have multiple crimes. Well, they concluded there was insufficient evidence. The Seventh Circuit in Snyder concluded the evidence was not sufficient. Yes. And one of the reasons I thought was that although it could have been a Hobbs Act, there were so few of them ever that were ever treated federally. Yes. That it was not a reasonable probability that any communication would result. That's right. And that's very similar, obviously, to this case. You have only in Tulsa County. We did present those figures to the to the district court in Tulsa County during 2018. There are approximately 650 federal firearm in possession of a felon cases and only 6.5 percent of those were prosecuted federally. They were overwhelmingly prosecuted in state court. Well, was it fair that, for instance, in New Mexico, every firearm case is prosecuted federally and in Oklahoma only in Tulsa, there's only a small amount. Is that unequal justice to all? I think. Well, I don't know. I don't know any about the figures in New Mexico. I do know what Snyder said, though. Yeah. Snyder, for instance, talked about a situation where in Indiana, a U.S. attorney prosecuted all pharmacy robberies. And so if that is the case, if you have that situation in New Mexico and that they prosecute all felons in possession of firearms, then that is a federal case. But in Oklahoma, where the vast majority of cases are handled in state court, it is principally a state prosecution. And so you have to go to the second level of analysis in Snyder because it's not federally, federal in nature. And you have to look at cases which are predominantly state in nature and see whether or not and that is. Well, the question isn't what's the percentage of filings in state or federal court? The question is, is there a community likelihood, reasonable likelihood of communication with the federal law enforcement? Yes. And you could communicate with federal law enforcement who declined the case. Yes. Now, here's my question is and maybe the Supreme Court hasn't done us any big favors with with the way they laid this out. But the jury was instructed to find this reasonable likelihood that is required, that the United States must show that the likelihood of communications to a federal officer was, and now Judge Lucero's language, was more than simply or was more than remote, outlandish or simply hypothetical. So if one in 10 cases, there was a communication, even not a prosecution, just communication with federal official, wouldn't that qualify? That's more than remote. It's not outlandish. Well, I would say that it's not more than remote. I don't think it is. And I don't think that you're dealing with the lowest parameter that we set out in Fowler. Fowler, in fact, asked the circuit courts to come up with a good framework for analysis in a case like this. Well, as my clerk pointed out to me, I was taking that position. She pointed out to me this morning that, in fact, that language, more than remote, outlandish or simply hypothetical, comes from Fowler. No, it does. I agree. It's the lowest parameter. So if the jury here said it's something more than remote, there's more than a remote chance, do we have to affirm? No, you don't have to affirm, because you can decide under the framework of Snyder, which I think is a good framework, or Johnson. You have to have some policy or practice in place that results in the investigation of this specific type of criminal activity. And so if you have that practice in place, you can have a situation where there's a reasonable likelihood that federal officials will look at it. Well, he also said the court said it can't merely be argument. It's got to be evidence. Yes. And which means we have to go look at the statute and see that it was with intent to do something to prevent a communication to a federal officer. So say you get shot and your buddy is an FBI agent. He comes to see you in the hospital. Is that enough? You get shot and your buddy is... And you're in the hospital recovering and in comes your friend. The answer is no. That's a sporadic situation. Okay. There has to be some policy or practice in place. And two good examples are the U.S. attorney that is going to charge federally all pharmacy robberies, or the case in Costopolis where you have corruption involving Miami police officers. And wherever you have a police officer that's charged with corruption, there's a public corruption and civil rights squad that reviews all of those specific types of cases. And so thereby, you ensure that there is going to be a communication to a federal official. If all you have, which is what you have in this case, are federal officers occasionally walking the halls of a police department. In fact, in Snyder, a federal officer even had an office in the police department. That constitutes nothing but a sporadic situation where on one or two or three occasions a year, you might get a federal prosecution out of those. But there's nothing that reviews all of the cases in that subset to make sure that they are considered for federal prosecution. And that's exactly what you have in this case. You have 650 cases a year that are felon in possession cases in Tulsa County. And you have absolutely no policy, not by the U.S. Attorney's Office, not in any kind of state federal squad, that reviews all of those cases. They might do it in New Mexico, and I'd have a hard time, I think, if I were an attorney from New Mexico if that's the case. But I'm an attorney from the Northern District of Oklahoma where they don't have that. And as a result of that, the evidence is insufficient. The judge's ruling in this case, that the fact that there's this Project Safe Neighborhoods, or the fact that the police officers are given cards, doesn't make the case. You have to have this systematic policy in place to ensure that somehow a federal agent is going to look at these cases. It's going to be more than a possible or potential. That's right. That's what Fowler said, that doesn't want these cases to become all federal cases. And this is what this case is doing. Does it matter that the ATF officer had heard the radio traffic and was responding to the scene? He responded to the scene only after the shooting. So the question you have to ask is whether or not there would have been a communication had there been no shooting. Well, he never got there, did he? I thought he had a wreck. He never got there. He had a wreck, but he responded. He had a wreck after the shooting. So we're on his way. Yes. I'd like to reserve the remainder of my time, please. Thank you. May it please the court. My name's Lena Alam. I represent the United States. Thank you. I'd like to first address Mr. Lund's final statement about the ATF agent that was on the way to the scene. If you review the record at approximately pages 212 to 214, Agent Williams' testimony was that he heard the call go out and he was leaving lunch to head to that location to help Officer Bean and Officer Quitzel investigate. And that it was... Well, how does that avoid being more than a possible or potential communication? The fact that he finished lunch and heard on the radio, the fire department all heard it. Every other policeman heard it. Does that make it more than a possible or potential communication? Yes, because he was going to the scene where the defendant was before the shots were fired. So that if the officer who was shot was in the hospital and he was a friend and he went up to talk to him and say, hey, God, I'm sorry you shot, would that be sufficient? No. Why not? The issue here is whether at the time the defendant attempted to kill the officer... It was with intent to prevent. To prevent a communication to law enforcement. In this case, the guy was trying to prevent being hit by pepper balls. And he got really P.O'd that the guy was shooting these pepper balls into the truck. And you've identified precisely what Mr. Chapman's argument was below in his Rule 29 motion was that the government had provided insufficient evidence of his intent to prevent communications with any law enforcement agents. Well, we looked at the whole package. But the issue on appeal is different. The issue on appeal is whether there was sufficient evidence of a reasonable likelihood of a communication to a federal law enforcement. Not a fortuitous communication, but a reasonable probability of a communication. The language in Fowler is reasonable likelihood. But the way... Suppose they're walking down the hall in the police station and the policeman says, say, I heard you got shot. And the FBI guy says, excuse me, the FBI guy says, I heard you got shot. He said, yeah, it was terrible. Is that enough? Certainly mere coincidental communications would not be enough. However... Would it be merely coincidental that this guy was not eating his lunch? That he was off fishing someplace and wouldn't have heard it? I mean, it seems to me that you're reaching here, that every single crime where somebody's in the Good Neighborhood Association and federal officers are involved, therefore it becomes a federal crime punishable by a lot of months. That is not our argument, Your Honor. In particular here, our argument is not based primarily on the ATF agent's intention of going to the scene, but it is based on Officer Parson's testimony that, in fact... He had a card in his pocket that he would maybe talk to people about safety in the neighborhood. That was not his testimony. His testimony was that he had referred numerous cases of this variety to his numerous contacts in the ATF. And on this particular occasion, had Mr. Chapman gotten out of the car when they wanted him to, what would have happened, they would have searched the car, they would have found the gun, they would have checked his criminal history. And Officer Parsons actually testified on page 178 of volume three of the record that he would have referred this case to the feds for consideration for federal prosecution. That is far more than remote, outlandish... Because an officer was shot? No, he said, had he not been shot, had Mr. Chapman emerged from the car, and in light of Mr. Chapman's criminal history, which included three prior possession of a firearm, AFCF charges at the state, that have been dismissed. Do you agree with the other statistic that your colleague alluded to, that there were 657 felons in possession, and only a very small percentage went to the federal court? I don't have any factual basis for disagreeing with him, however, I think his statistic is irrelevant. But on principle, you disagree? No, I believe his statistic is absolutely irrelevant, because the issue here is not the likelihood of prosecution of a federal case, it's the likelihood of the communication. And as Judge Egan found in her order denying the defendant's motion for new trial, whether a case was ultimately prosecuted at the federal level or at the state level is immaterial to whether there was a likelihood that the initial communication would be made. Okay, so the Seventh Circuit is wrong? The Seventh Circuit has effectively set forth a two-part test. The first way to satisfy that test is by proving that this is somehow and essentially a federal offense. But they identify a second part of that test, which I think is satisfied here, which is even if this was a case that wasn't necessarily going to be prosecuted federally, whether there was a reasonable likelihood that a communication would take place. And in this case, unlike Snyder, the victim was not a 19-year-old girl who drove the getaway car. The victim was a TPD officer who had served as a task force officer at the ATF and who personally said, even if Mr. Chapman had gotten out of the car when we asked him to and not been pepperballed, I would have communicated, and that puts it in the second part of Snyder's analysis. So the Eleventh Circuit is wrong in their analysis of Fowler where a sheriff's officer had embezzled money because the probabilities were that it would not go to federal court? All of the cases other than Snyder that Mr. Lund cites in his reply brief, Chaffin, Lobbins, Tyler, all of those cases involve situations where the defendants were tried before Fowler pursuant to incorrect jury instructions that Fowler deemed incorrect. And therefore, the analysis in all of those cases went to whether those convictions could stand in light of Fowler because the circuit precedent preceding Fowler had required a much lower standard. And for those reasons, those three cases aren't helpful to this court's analysis. Do you have any cases that are more helpful? Yes. Costopolis, the Eleventh Circuit case. Costopolis was a deprivation of civil rights where there was a squad in permanently working all of those cases. And this Costopolis was violating civil rights. Yes. And so that's not a help either. The testimony here, both from Chief Deputy Eric Dablish and from Sergeant Parsons, Officer Quetzel, was that the PSN program in the Northern District of Oklahoma is a collaborative effort of the Tulsa Police Department. That's like a safe neighborhood situation. Yes, that results in... So that every case then, because they could have a possibility of going into one of the meetings, is sufficient? That is not sufficient. There has to be, and I think one of the cases described this as a federal nexus plus, because the fourth element under Fowler of 1512A1C violation is that there be a, that the information be related to the commissioner, possible commission of a federal offense. That is required, but that doesn't meet the third element of Fowler, which is a reasonable likelihood that the communication would have been made. And what the Ninth Circuit... But what does that mean, a reasonable likelihood? 10%? The Supreme Court says more than... They didn't say. They didn't say. Or merely hypothetical. And Justice Scalia had a real problem with that too. Yes. And what it means, if you look at Johnson, where they... 10 minutes? 10% chance rather? A 10%, certainly a 6% chance that the case would actually be prosecuted federally, suggests that, and if you look at Custopolis, I believe it's Custopolis, where they found that it was significant that all of the cases would be reviewed by the feds for possible opening of a case. But it has flawed working, this exact type of crime. And that's what the PSN program in the Northern District of Oklahoma is. Not in this case. That's a very loose organizational collaboration. In fact, the testimony was that these types of cases in particular, traffic stops where felons with violent criminal histories are found with firearms, are precisely the cases that are referred to the Northern District of Oklahoma, to the federal authorities for consideration for prosecution. The fact that not all of those cases are prosecuted federally, doesn't diminish the reasonable likelihood that that communication will occur in the first place. I could just ask just one big picture question. Getting away from the minutia and detail of this case and the other cases that have arisen so far, what is the broad policy, not policy, but the broad principle that was confronted, that the Supreme Court confronted in Fowler? What is the principle that the court was trying to pronounce? And how does this case fit under that principle? Just the big picture, please. The principle was that the court was concerned that every potential federal case could provide a basis for this kind of obstruction charge. However, the way the court addressed that was by requiring something more than the fact that the case could be the basis of federal charges, which under... Excuse me. You broke up there. I'm sorry. Potentially could be what? That every case that could potentially be charged in federal court could be the basis of an obstruction charge if someone was killed or attempted to be killed for that. So the Supreme Court solution for that was to require something more than the mere possibility of federal prosecution, but that specific evidence be required to show that reasonable likelihood. That the communication would take place in the first instance. In this case, there was ample testimony that established, in this case, that that communication would have taken place, not just was reasonably likely, but was almost certain. I'd like to spend... Let me tell you what's bothering me, and maybe you can respond to that. You say that the Rule 29 argument was not... That that's not on appeal, but as I look at page 18, I see... Is that very argument that's made, which is the Sesame Street thing. Which one of these things is not like the other? This case is totally different. It's a misfit as compared to the other circuit cases. Fowler itself. They shoot a policeman who comes across the prospective bank robbers in the graveyard as they're plotting their scheme. Gang member who they think might tell the 19-year-old getaway driver from the bank. They're afraid she might tell they shoot. It's very clear to me that they're intimidating a witness by keeping that witness from being able to be involved in the proceeding. This one, as the trial counsel noted, and really his whole closing argument was this, and filed or at least asserted a Rule 29 argument, was this makes zero sense. You don't take your gun after you've been shot, as Judge Kelly said, with the pepper balls. He didn't think, well, if I shoot Officer Parsons, then this will probably do... Nobody will prosecute me for being a felon in possession. It's just totally different from those others. And we're talking 40 years of imprisonment on that. Why is this whole prosecution not a complete misfit to what's intended by that statute? The key that I want to draw the court's attention to is that was the basis for the Rule 29 motion. That was, in fact, trial counsel's best argument in his closing argument. And that is not the issue that has been raised in this opinion. Well, I referred you to page 18 where I think that issue is raised. The issue in this case was, as I understood it, is that the question is whether there was a reasonable likelihood of communication to a federal officer. That's an issue too. But what is your response to that? This case is not like the others. That the jury found, and that under a sufficiency of the evidence review, that there was sufficient evidence... Explain it to me then. How did this gentleman who fires a shot after being pepper balled, how is he intimidating a witness from being able to talk to law enforcement when there are other law enforcement there? He ensures, he not only diminishes, he's not trying to diminish the chance that there's going to be a communication with law enforcement who may turn out to be federal law enforcement. He's guaranteeing it. It's a misfit. His decision to shoot Officer Parsons, it was consistent with his conduct throughout the stop, which was just wanting to get away, not wanting to give his name. And even if it was an irrational decision on his part... Is he in the back seat? I believe so. At least that's certainly when the shooting takes place. How do you get away by firing a gun at a number of law enforcement officers standing outside the minivan with firearms? His intent need not have been rational. We're talking sufficient evidence. And there was sufficient evidence that his intent was to escape. Whether that was a rational intent or not was not the question, as the government's closing argument addressed. But there's a limit. I mean, we have to live in reality. And the jury... Could you speed it along, please? I'm sorry. I understand, but just you've got a question, but... Sure. And my response is that the jury was presented squarely with this issue and concluded, based on the manifestations and the evidence presented, that that was his intent. And this court should defer to the jury's findings, as did Judge Egan. We would ask you to affirm. Thank you, counsel. Justice Scalia, in his concurring opinion, did talk about what Congress wanted to do with this statute. It was... Congress was concerned with preserving the integrity and effectiveness of federal prosecutions. And so that talks about making sure that witnesses who are going to be witnesses in federal trials or who might be involved in federal investigations or imminent federal investigations are not intimidated. And this is a case where none of that was going on. None of it. And so as a result, it doesn't really fit into this. As Justice Scalia talked about... What would you do? What would you have us do with the fact that this question was presented to the jury and the jury was instructed on it? That happened... This court is to consider the evidence de novo, whether or not a rational jury could have made that decision. And the answer is they shouldn't have. As Justice Scalia said, this case, this type of case, is one that has only a tangential federal interest. When you have a 13 to 1 prosecution ratio in favor of the state... Does that matter? Isn't the question not whether the likelihood that it's going to be prosecuted federally, but that it's going to be reported to and reviewed federally... Yes. For consideration for prosecution. Isn't that the question? And there's virtually no evidence. Well, there isn't any evidence. No, I understand. But I mean, isn't that the question for us? Not whether it was prosecuted, but whether... Or the likelihood that it would be, but whether it's the likelihood that it would be reported and reviewed. Yes, there is no evidence that any practice was in place to review these felon in possession of firearms cases in the Northern District of Oklahoma. Thank you, Counsel. Case is submitted. Counsel are excused. And we turn to the last case this morning, United States v. Brown. That's case number 147039.